AES:MSM
F. #2018R02010

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 09 2020 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

DOUGLAS ROTH,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N F O R M A T I O N

Cr. No. 20-481 (JMA)
(T. 15, U.S.C., §§ 78j and 78ff; T. 18,
U.S.C., §§ 981(a)(1)(C) and 3551 et
seq.; T. 21, U.S.C., 853(p); and T. 28
U.S.C., § 2461(c))

INTRODUCTION

At all times relevant to this Information, unless otherwise stated:

I.     <u>The Defendant and Relevant Entities and Terms</u>

        1.      Aceto Corporation ("Aceto") was a Port Washington, New York-based business engaged in the development, marketing, sale and distribution of, among other things, generic pharmaceuticals (the "Generic Business") and chemicals. Aceto was registered with the United States Securities and Exchange Commission ("SEC") and Aceto shares traded on the Nasdaq stock exchange under the ticker symbol "ACET."

        2.      The defendant DOUGLAS ROTH was a resident of East Northport, New York. From approximately May 2001 to March 31, 2018, ROTH was the Chief Financial Officer ("CFO") of Aceto.

        3.      Rising Pharmaceuticals Inc. ("Rising"), Citron Pharma LLC ("Citron") and Lucid Pharma LLC ("Lucid") were three companies acquired by Aceto to expand its Generic Business. In internal communications, Aceto sometimes referred to the three companies collectively as "Rising."

   4.  "Goodwill" was an intangible asset that was associated with the purchase of one company by another.

   5.  A "financial covenant" was a promise or agreement entered into by a borrowing party as a condition of receiving a loan, as defined in the documents governing the loan.

II. <u>Relevant Confidentiality Policies</u>

   6.  Employees of Aceto, including the defendant DOUGLAS ROTH, had a duty to maintain the confidentiality of information concerning the business of Aceto. Specifically, Aceto's insider trading policy prohibited trading while in possession of material, non-public information ("MNPI") about Aceto. These obligations applied to Aceto employees and contractors, and continued even after termination of the employment relationship.

III. <u>The Fraudulent Scheme</u>

   7.  In or about and between January 2018 and April 2018, the defendant DOUGLAS ROTH engaged in a fraudulent scheme whereby he executed and caused others to execute securities transactions in Aceto based, in whole or in part, on MNPI that he obtained in his capacity as an employee of Aceto. Specifically, while serving as Aceto's CFO, ROTH learned that Aceto's financial performance had worsened substantially as compared to its publicly-released financial statement for the quarter ending December 31, 2017 and that, as a result, Aceto was (i) likely to breach certain financial covenants it owed to its lenders, and (ii) might need to write down more than $100 million in goodwill assets. While in possession of that non-public information, ROTH sold approximately 69,549 shares of Aceto stock. Shortly thereafter, Aceto issued a press release publicly announcing that its financial condition had worsened, that it had breached certain financial covenants and that it would need to write down

significant goodwill assets. Following the press release, Aceto's share price dropped significantly. Roth's stock transactions prior to the public announcement and share price drop ultimately allowed him to avoid losses of more than $145,000.

A.    <u>Aceto Used Debt to Acquire Citron and Lucid</u>

8.    In or about December 2016, Aceto acquired the generic products and related assets of Citron and Lucid to expand Aceto's Generic Business. Aceto funded the acquisitions, in part, through a $225 million revolving credit facility and a $150 million term loan from a consortium of banks (the "Bank Loans").

9.    The Bank Loans required Aceto to meet certain financial covenants, including covenants that Aceto remain below a specified maximum Total Net Leverage Ratio and above a specified minimum Debt Service Coverage Ratio (the "Financial Covenants"). If Aceto breached either of the Financial Covenants, the lenders were able to declare Aceto in default. If Aceto did not cure that default, the lenders could demand full repayment of the Bank Loans.

10.    On or about February 2, 2018, Aceto filed a Form 10-Q for the quarter ending December 31, 2017. According to the financial statements in Aceto's Form 10-Q, as of December 31, 2017, Aceto had goodwill valued at $237,019,000 out of total assets valued at $1,014,944,000, and was in compliance with all the Bank Loans' financial covenants.

B.    <u>The Defendant Obtained MNPI</u>

11.    Beginning in or about January 2018, in the course of his employment as Aceto's CFO, the defendant DOUGLAS ROTH received non-public information that Aceto's financial performance was declining. Specifically, ROTH learned that Aceto was unlikely to meet its financial projections for the quarters ending March 31, 2018 and June 30, 2018, because

of difficulties with the Generic Business and that, as a result, Aceto's internal forecasts predicted that Aceto would breach the maximum Total Net Leverage Ratio financial covenant contained in the Bank Loans.

12. In or about February 2018, the defendant DOUGLAS ROTH continued to receive non-public information about Aceto's declining financial performance, which showed Aceto's financial position worsening as compared to Aceto's latest publicly-disclosed financial statements. Specifically, ROTH received information that Aceto expected it would breach at least one of the Bank Loans' financial covenants and that it might need to record an impairment of its goodwill assets.

13. During March 2018, the defendant DOUGLAS ROTH continued to receive non-public information about Aceto's declining financial performance. The information that ROTH received showed that Aceto expected to breach the Financial Covenants. ROTH also received internal modeling predicting that Aceto might need to record an impairment to its goodwill assets of between $135 million and $235 million.

14. On or about March 31, 2018, the defendant DOUGLAS ROTH retired from his position as CFO of Aceto. ROTH had agreed that, after his retirement, he would serve as a consultant to Aceto to, among other things, deliver financial reporting and accounting advisory services for the upcoming financial reporting periods. ROTH's consulting agreement with Aceto was effective as of April 4, 2018.

C. The Defendant Sold Stock While In Possession of MNPI

15. On or about April 3, 2018, the defendant DOUGLAS ROTH sold 34,744 shares of Aceto stock at a price of $7.0409 per share for a total of $246,342.83.

16. On or about April 4, 2018, the day that the defendant DOUGLAS ROTH began serving as a consultant to Aceto, ROTH sold 34,805 shares of Aceto stock at a price of $7.0778 per share for a total of $243,547.88.

17. On or about April 18, 2018, Aceto's stock closed at $7.40 per share.

D. Aceto's Press Release Publicly Disclosed Negative Financial Information

18. On or about the afternoon of April 18, 2018, after the stock market closed for the day, Aceto issued a press release (the "April 18 Press Release") announcing several pieces of negative financial news. This information included, among other things, that Aceto (i) was negotiating a waiver of breaches of the Financial Covenants, and (ii) anticipated recording an impairment to its goodwill assets in the range of $230 million to $260 million.

19. On or about April 19, 2018, the day after Aceto issued the April 18 Press Release, Aceto's stock opened at $3.20 per share, dropped as low as $2.60 per share, and closed at $2.66 per share.

20. The defendant DOUGLAS ROTH avoided losses of more than $145,000 by selling Aceto shares on April 3, 2018 and April 4, 2018, prior to the April 18 Press Release.

INSIDER TRADING

21. The allegations contained in paragraphs one through 20 are realleged and incorporated as if fully set forth in this paragraph.

22. On or about and between April 3, 2018 and April 4, 2018, within the Eastern District of New York and elsewhere, the defendant DOUGLAS ROTH did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a)

employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in Aceto, to wit: in advance of the April 18 Press Release, the defendant obtained MNPI regarding Aceto's declining financial performance, anticipated breach of the Financial Covenants and goodwill impairment and, based in whole or in part on that information, executed, and caused to be executed, one or more securities transactions in Aceto, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Section 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

25. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the United States will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting or derived from proceeds traceable to such offense.

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

*[signature]*
SETH D. DUCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2018R02010

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

DOUGLAS ROTH,

Defendant.

# INFORMATION

(T. 15, U.S.C., §§ 78j and 78ff; T. 18, U.S.C., §§ 981(a)(1)(C) and 3551 et seq.; T. 21, U.S.C., 853(p); and T. 28 U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* \_\_\_\_\_

_____

*Clerk*

*Bail, $* _____ _____

*Alixandra E. Smith and Mathew S. Miller, Assistant U.S. Attorneys (718) 254-6370/6075*