

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AES:MSM | *271 Cadman Plaza East* |
| F.# 2018R02010 | *Brooklyn, New York 11201* |

May 11, 2021

<u>By ECF</u>

The Honorable Joan M. Azrack
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:    United States v. Douglas Roth
                <u>Criminal Docket No. 20-481 (JMA)</u>

Dear Judge Azrack:

        The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for May 24, 2021 at 11:30 a.m.  For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 12 to 18 months' imprisonment.

I.      <u>Factual Background</u>

        The defendant was the Chief Financial Officer ("CFO") of Aceto Corporation ("Aceto"), a Port Washington, New York-based business engaged in the development, marketing, sale and distribution of generic pharmaceuticals and chemicals.  Shares of Aceto's stock traded on the NASDAQ stock exchange.  Presentence Investigation Report ("PSR") ¶ 4.

        In the first quarter of 2018, while serving as Aceto's CFO, the defendant learned from non-public, internal forecasts and modeling that Aceto's financial performance had worsened substantially as compared to the most recent public financial reporting.  PSR ¶ 6. Specifically, beginning in January 2018, the defendant learned that Aceto was likely to breach certain financial covenants that it owed to its lenders, which could result in the loans becoming immediately due, and was likely to need to write down more than $100 million in the value of its

1

goodwill assets.  Id. ¶¶ 6-8.  The defendant continued to receive non-public reports about Aceto's declining financial performance into March 2018, which showed that Aceto was likely to breach its financial covenants and that it was likely to need to record an impairment of its goodwill assets for between $135 million and $235 million.  Id. ¶ 8.

After learning that information, in violation of his duty of confidentiality to Aceto, on April 3 and 4, 2018, the defendant sold 64,459 shares of Aceto stock, a portion of which were sold in order to pay the taxes due as a result from the vesting of certain shares upon his retirement on March 31, 2018.  Id. ¶¶ 6, 9.  Shortly thereafter, on April 18, 2018, Aceto publicly disclosed this negative financial information and Aceto's stock price dropped significantly.  By selling prior to the public disclosure of the negative financial information, the defendant avoided losses of at least $145,000.  Id. ¶ 9.  At the time the defendant sold his shares, he was no longer the CFO of Aceto.

II.  Sentencing Guidelines Range

A.  Guidelines Calculation

The government respectfully submits that the Guidelines calculation set forth in the PSR and the Addendum, and as set forth below, is correct.

| Base Offense Level (U.S.S.G. § 2B1.4) | 8 |
|---|---|
| Plus:  Gain Exceeded $95,000 (§§ 2B1.4(b)(1), 2B1.1(b)(1)(E)) | +8 |
| Less:  Acceptance of Responsibility (§§ 3E1.1(a) and (b)) | -3 |
| Total Offense Level: | 13 |

The defendant has a criminal history score of zero, and thus a criminal history category of I.  PSR ¶ 28.  Based on a total offense level of 24 and a criminal history category of I, the defendant's Guidelines range of imprisonment is 12 to 18 months.

B.  Downward Departures are Inappropriate

In his sentencing memorandum, dated April 30, 2021 ("Def. Memo"), the defendant argues that downward departures for (i) aberrant behavior pursuant to U.S.S.G. § 5K2.20 and (ii) meaningful family ties and responsibilities pursuant to U.S.S.G. § 5H1.6 are applicable.  Def. Memo at 4, 6.  The arguments should be rejected.

The departure for aberrant behavior is not applicable in this case.  U.S.S.G. § 5K2.20(b) permits the Court to depart downward "if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  While the defendant has led an otherwise law-abiding life and made his sales over the duration of two days, those sales were not a spur-of-the-moment decision.  To the contrary, the defendant received regular updates about Aceto's negative financial

2

performance between January 2018 and March 2018.  He then sold his shares—which vested upon his March 31, 2018 retirement—almost immediately after being able to do so, on April 3 and 4, 2018.

The departure pursuant to U.S.S.G. § 5H1.6 for family ties and responsibilities is also not appropriate.  Section 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted," and a departure under this section does not apply unless, a guidelines sentence will "cause a substantial, direct, and specific loss of essential caretaking . . . to the defendant's family," the "loss of caretaking or financial support <u>substantially exceeds</u> the harm ordinarily incident to incarceration for a similarly situated defendant," and the "loss of caretaking . . . is one for which no effective remedial or ameliorative programs reasonably are available."  U.S.S.G. § 5H1.6 Application Note 1(B) (emphasis added).  The fact that "the defendant's family might . . .  suffer to some extent from the absence of [the defendant] through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration."  <u>Id.</u>

Here, the defendant argues that the departure should apply because he is a "caretaker for his grand-daughter" and plays a role in "guiding his family through the trauma of the past year."  Def. Memo at 7.  While the defendant's daughter has had significant medical complications since the defendant committed insider trading, and the defendant has provided support and childcare for his daughter and granddaughter during that time, the hardship to the defendant's family would not "substantially exceed" the harm ordinarily incident to incarceration, nor would the defendant's incarceration render the family without "reasonably . . . available" alternatives for care of the defendant's granddaughter.  Indeed, the defendant concedes that "his wife Melissa also assists with childcare responsibilities during the week."  Def. Memo at 7.  Accordingly, a departure under this section is inappropriate.  The Second Circuit has rejected a downward departure in circumstances just like those in this case – where other family members were capable of providing support in the defendant's absence.  <u>See</u>, <u>e.g.</u>, <u>United States v. Smith</u>, 331 F.3d 292, 294 (2d Cir. 2003) (rejecting departure where defendant supported only one young child and his wife was capable of working, although she would have had to drop out of college to do so); <u>United States v. Madrigal</u>, 331 F.3d 258, 260 (2d Cir. 2003) (per curiam) (rejecting departure where only one of the defendant's six children was under eighteen and there was no finding made that the defendant was the only family member capable of supporting her family).

III.   <u>The Appropriate Sentence</u>

Contrary to the defendant's assertions, given the seriousness of the conduct here, a sentence of probation is not sufficient to provide just punishment, to promote respect for the law and effect adequate deterrence.  Indeed, for the reasons set forth below, the government respectfully recommends a sentence within the applicable Guidelines range.

A.   <u>The Applicable Law</u>

It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to

3

secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect  for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."  18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider."  United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).  Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

B.     Application

The Section 3553(a) factors taken as a whole weigh in favor of a Guidelines sentence.

The defendant's conduct in this case was serious.  The defendant was the Chief Financial Officer of a publicly-traded corporation.  In that role, he was privy to extremely sensitive and non-public information about Aceto and was trusted to use that information for the

4

benefit of Aceto, not for his own personal benefit.  Indeed, Aceto trusted the defendant to such an extent that it made him responsible for the operation of its insider trading compliance program.  But the defendant breached that trust, using his privileged position to sell his personal shares of the company before news of the company's negative financial performance became public.

The need for just punishment, to promote respect for the law, and to deter the defendant and other corporate insiders from personally benefitting from the non-public corporate information with which they are entrusted also weighs heavily in favor of a Guidelines sentence. The defendant argues that forfeiting the illegal benefit that he received and his "public humiliation" "will send a strong message to the white-collar community that this behavior is inexcusable."  Def. Memo at 17-18.  But a non-custodial sentence will send a very different message – that there are no consequences for this kind of white-collar crime other than to have to give up the ill-gotten gains.  Without a sentence of incarceration, this defendant will be in essentially the same position he would have been in had he not committed the crime—retired, at home with his family, without the money he avoided losing by insider trading.  There would be no incentive for corporate insiders to not at least try to trade on their nonpublic information, knowing that if they got caught—and such crimes are extremely difficult to detect—they would simply have to pay back what they illegally obtained.  A Guidelines sentence here will send a message that powerful corporate executives must follow the rules like everyone else.

In arguing for a sentence of probation—far below the applicable Guidelines range—the defendant focuses heavily on his history and characteristics, including his lack of prior criminal history, his commitment to his family, and his and his family's health crises.  The Guidelines range already accounts for the fact that the defendant has no prior criminal history. Moreover, while the Court certainly should consider the defendant's family connections and health crises in fashioning an appropriate sentence, those facts do not outweigh the other Section 3553(a) factors, which counsel in favor of a Guidelines sentence.

IV.   <u>Conclusion</u>

       For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Sentencing Guidelines range that is sufficient, but not greater than necessary, to achieve the goals of sentencing.  <u>See</u> 18 U.S.C. § 3553(a)(2).

                Respectfully submitted,

                MARK J. LESKO
                Acting United States Attorney

By:     /s/ Mathew S. Miller          
                Alixandra Smith
                Mathew S. Miller
                Assistant U.S. Attorneys
                (718) 254-6370/6075

cc:    Defense Counsel (by e-mail and ECF)
       United States Probation Officer Steven Guttman (by e-mail)